**SILVERMANACAMPORA LLP**
Proposed Attorneys for Kangadis Food, Inc.
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Adam L. Rosen
Sheryl P. Giugliano
Brian Powers

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

KANGADIS FOOD INC.                                       Chapter 11
  d/b/a The Gourmet Factory,
                                                         Case No. 14-72649 (___)

                            Debtor.
-----------------------------------------------------------x

**DEBTOR'S MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE
§ 502(c) AUTHORIZING ESTIMATION OF DEBTOR'S LIABILITY IN CLASS
ACTION, AND ESTABLISHING SCHEDULE FOR ESTIMATION PROCEEDING**

TO:    THE HONORABLE _____
       UNITED STATES BANKRUPTCY JUDGE

Kangadis Food Inc., the above-captioned debtor and debtor in possession (the "**Debtor**"), by its proposed counsel, SilvermanAcampora LLP, submits this motion (the "**Motion**"), the Declaration of Craig M. Fine in Support of the Motion, dated June 6, 2014 (the "**Fine Declaration**"), the Declaration of George Krueger in Support of the Motion, dated June 6, 2014 (the "**Krueger Declaration**"), and respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.     By this Motion, the Debtor requests, pursuant to section 502(c) of title 11, United States Code (the "**Bankruptcy Code**"), that the Court estimate the Debtor's aggregate liability with respect to the claims set forth in the Class Action (defined below), pending in the U.S. District Court for the Southern District of New York. Specifically, the Debtor requests that the Court approve the proposed scheduling order annexed hereto (the "**Scheduling Order**"), which sets for a timeline for an estimation proceeding before this Court.

AROSEN/1494216.4/063637

2.     Estimating the Debtor's aggregate liability in the Class Action is essential because the Debtor cannot confirm a chapter 11 plan in this case until the amount of the Class Claim is determined. Discovery in the Class Action is completed, and this Court could conduct an expedited estimation hearing to fix the amount of the claim.

3.     The alternative of lifting the automatic stay to permit the U.S. District Court to conduct a two-week jury trial and determine the claim is not practical, or in the best interests of creditors because the Debtor cannot afford the legal fees which will be required to conduct such a trial, which the Debtor estimates will be at least $750,000.00.  *See* Krueger Declaration, ¶5. Moreover, the jury trial may result in a finding of no liability, or a finding of liability with no damage award.  *See* Krueger Decl., ¶11-12.   In that case, the Debtor will have paid for a very expensive trial, merely to reach the conclusion that the Class Action plaintiffs are not entitled to any damages.

4.     The Debtor intends to file a chapter 11 plan in the next two (2) weeks which will provide distributions to allowed creditors in accordance with the priority scheme set forth in the Bankruptcy Code. Assuming that the Class Claim is estimated at zero, or an amount less than $1 million, the Debtor expects to be able to confirm a chapter 11 plan that pays creditors in full. Absent estimation of the Class Claim, the Debtor would have to reserve for the full amount of the asserted Class Claim in the amount of approximately $35 million.

5.     Over the past six months, the Debtor has attempted to settle the Class Action claim, but unfortunately no settlement has been reached.  *See* Krueger Decl., ¶6.  The parties are at an impasse, and the only rational way to proceed is to schedule an estimation hearing to establish the allowed amount of the claim.  Judge Rakoff has scheduled a two-week jury trial to begin on September 3, 2014.  The cost and disruption that will be caused by a jury trial will adversely affect the prompt confirmation of a plan in this case, drain the Debtor's resources, further distract the Debtor's officers and employees from running the Debtor's business operations, and diminish whatever recoveries are available to unsecured creditors.

6. Moreover, without a prompt estimation of the Class Claim, the Debtor's operations will suffer and its ability to reorganize will be severely hampered. *See* Fine Declaration, ¶7. Further, it is unlikely that Citibank, N.A. ("**Citibank**") the Debtor's pre Petition Date secured lender, will consent to funding the cost of the trial.

7. For the reasons set forth below, the Debtor believes that the Class Claim should be estimated at zero for all purposes, including allowance, voting, and distribution under any chapter 11 plan proposed by the Debtor in these cases. The Court should schedule an estimation proceeding and enter an order substantially similar to the Scheduling Order annexed hereto.

## BACKGROUND

8. On June 6, 2014 (the "**Petition Date**"), the Debtor commenced a case under chapter 11 of the Bankruptcy Code, in this Court.

9. The Debtor is a food import and distribution company formed in 2003. The Debtor is a leading importer of olives and other European delicacies, and is a leading producer of olive oil. The Debtor sells its products under the brand names "Capatriti," "Porto," "Olio Villa," "Zorba," and "Kivotos." The Debtor's customers consist primarily of wholesale vendors who then sell direct to consumers.

10. For the past six years, the popularity of the Debtor's olive oil product sold under the brand name "Capatriti" has grown over time, and it now occupies approximately 15% of the market in the New York metropolitan area.

11. The Debtor has 51 employees and operates from a facility located in Hauppauge, New York, that serves as a warehouse, production facility, and shipping center.

12. On the Petition Date, the Debtor was indebted to Citibank, N.A. ("**Citibank**") in the amount of $3.5 million under a line of credit. Citibank's loan is secured by a first-priority security interest in substantially all of the Debtor's assets, including inventory and accounts receivable.

13. The Debtor remains in possession of its property and management of its affairs pursuant to Bankruptcy Code §§ 1107(a) and 1108.

14. To date, no committee, trustee, or examiner has been appointed in this case.

15. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

16. Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

### THE NAOOA ACTION AND THE CLASS ACTION

**The NAOOA Action**

17. In or about February 2013, the North American Olive Oil Association ("**NAOOA**"), a trade association representing the interests of the olive oil industry, commenced an action (the "**NAOOA Action**") against the Debtor for violating Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), and for deceptive acts and practices and false advertising under New York General Business Law §§ 349 and 350, titled *North American Olive Oil Association (NAOOA) v. Kangadis Food Inc.,* Index No. 13 Civ. 868, in the United States District Court for the Southern District of New York.

18. NAOOA alleged that the Debtor labeled its bottles and tins produced and sold under the Capatriti brand, as "100% pure olive oil," even though the Capatriti brand of oil was allegedly composed of olive pomace oil.

19. In or about July 2013, the Debtor and NAOOA settled the NAOOA Action and entered into a confidential settlement agreement, pursuant to which the Debtor made no admission of liability. As a result of the publicity surrounding the NAOOA Action, a number of customers cancelled their orders for the Debtor's olive oil products, and a class action lawsuit was filed against the Debtor.

**The Class Action**

20. On April 8, 2013, Joseph Ebin and Yeruchum Jenkins commenced an action against the Debtor in the United States District Court for the Southern District of New York (the

"**District Court**") titled *Joseph Ebin, Yeruchum Jenkins, et al. v. Kangadis Food Inc., d/b/a The Gourmet Factory,* Index No. 1:13-cv-02311-UA (the "**Class Action**"), asserting causes of action for fraud and breach of warranty under both New York and New Jersey law relating to the Debtor's alleged misbranding and sale of "olive-pomace oil" as "olive oil." Notably, the Class Action relates only to the Debtor's "Capitriti"™ brand of olive oil.

21. The plaintiffs in the Class Action alleges that the Debtor sold containers of "Capitriti"™ brand "100% Pure Olive Oil" that actually contained an industrially processed substance known as "olive-pomace oil," "olive-residue oil", or "pomace."

22. The Debtor alleges that, even if there is liability for mislabeling (which the Debtor disputes), the plaintiffs cannot objectively ascertain the actual members of the class, or the extent of any injury by the putative class members.

23. On December 11, 2013, U.S. District Court Judge Rakoff certified the Class Action under Rule 23 of the Federal Rules of Civil Procedure, over the Debtor's objection. On February 25, 2014, he issued a memorandum opinion setting forth the reasons for that ruling, and a separate memorandum order denying the Debtor's motion for summary judgment. (Copies of the order and memorandum opinion are annexed hereto **Exhibit A** and **Exhibit B,** respectively)

24. As stated above, Judge Rakoff scheduled a two-week jury trial beginning September 3, 2014. The Debtor disputes that the plaintiff can prove liability, and even if it can, the Debtor disputes that the plaintiff can properly identify the individual consumers who might have been damaged by the mislabeling (collectively, the "**Class Members**"). *See* Krueger Decl., ¶10-12.

25. In his decision, Judge Rakoff expressed some concern about the plaintiffs' ability to identify the Class Members by referring to objective criteria. *See* Memorandum Opinion, p. 9-11. This is known as the "implied requirement of ascertainability." *See* Memorandum Opinion, at p. 9. Indeed, Judge Rakoff acknowledged that Class Members will not have receipts or

remember details as to their purchases of the Debtor's Capatriti™ oil.  It follows then, that any declaration those Class Members might sign would be unreliable. See Memorandum Opinion, p. 11.

26. The Debtor has incurred legal fees, and related costs of approximately $1.4 million in connection with defending the NAOOA Action and the Class Action over the past year. *See* Krueger Decl., ¶5; Fine Decl. ¶5.  The filing of this chapter 11 case was directly caused by both these costs and the significant disruption to the Debtor's business.

## **RELIEF REQUESTED**

### **The Need for Estimation**

27. The only chance the Debtor has to reorganize is to promptly estimate the Class Action claim under Bankruptcy Code § 502(c) so that the Debtor can promptly propose a chapter 11 plan which will satisfy the claims of creditors.

28. But for the crippling attorneys' fees and costs incurred as a result of the Class Action, and the tremendous disruption to the Debtor's relationship with customers and its employees, the Debtor is operating profitably.  *See* Fine Decl., ¶ 8.

29. The Debtor has in good faith attempted to settle the Class Action but those efforts have not been successful.  *See* Krueger Decl., ¶6.  The Debtor believes that the Class Action plaintiffs, and their attorneys, are seeking an unreasonable amount of damages that cannot be proven at trial, and certainly cannot be satisfied from the Debtor's assets, or from its available credit under the Citibank line. *Id.*

30. Here, the Debtor has been unable to settle the Class Action because of the unrealistic settlement expectations and scorched-earth litigation tactics of counsel to the Class Action plaintiffs.[1] *See* Krueger Decl., ¶6.  Thus, the Debtor is left with no choice but to seek the

---

[1] For example, Bursor & Fisher, P.A., counsel to the Class Action plaintiffs, during the pendency of the Class Action, filed a complaint against the shareholders of the Debtor and an affiliate of the Debtor for alter-ego liability and piercing the corporate veil. The filing was in direct violation of an Order of Judge Rakoff. On April 11, 2014, Judge Rakoff effectively sanctioned Bursor & Fisher, P.A, and dismissed the complaint without prejudice. The Debtor

protection of the automatic stay and an estimation of the Class Action claim.

31. The Debtor believes that the Class Claim should be estimated at zero for the following reasons. The summary below is merely designed to provide the Court with a general idea of the issues. If this Motion is granted, the Debtor and the Class Action plaintiffs will provide briefs to this Court regarding the estimation of the Class Action claim.

32. First, the vast majority of the Class Members cannot be readily ascertained by reference to objective criteria. *See* Krueger Decl., ¶10. In discovery, permitted by the U.S. District Court after certifying the Class, it was revealed that the Class Action plaintiffs were able to identify fewer than 200,000 Class Members, a tiny fraction of the size of the alleged Class. Under applicable federal class action law, this infirmity is fatal to the Class claims. *See, e.g., Carrera v. Bayer Corp.*, 727 F. 3d 300, 310 (3d Cir. 2013) (denying class certification where class membership is largely based on non-objective criteria and self-identification), *Karhu v. Vital Pharm., Inc.,* No 13-60768-CIV, 2014 WL 815253 (S.D. Fla. March 3, 2014) (denying certification in class action suit brought by Bursor & Fisher related to representations in connection with sale of dietary supplement.)

33. Second, when the District Court certified a nationwide class for claims of fraud and misrepresentation, it did so in reliance on the allegations of the Class Members that the Debtors only sold the olive oil in question in "five different states" in the Northeast. *See* Krueger Decl., ¶10. Based on that representation, the District Court concluded that a class could be certified because the law on fraud and misrepresentation is not materially different between and among the states of New York, Vermont, Connecticut, New Jersey and Pennsylvania. However, post-certification discovery has revealed that Class Members are located in all 50 states and, thus, the Class Members cannot possibly assert claims for fraud and misrepresentation because the laws governing fraud and misrepresentation vary in many states.

---

expects that Bursor & Fisher, P.A may attempt to use the threat of the alter-ego claim against the Debtor in this case in order to apply pressure on the Debtor. *See* Krueger Decl., ¶6.

34. Third, Class members have a high burden of proof in proving liability given that olive-pomace oil is "olive oil" in every way, shape, and form. *See* Krueger Decl., ¶11. Expert testimony has already been submitted to the U.S. District Court showing that olive-pomace oil is "olive oil" because it is derived exclusively from the olive fruit. *Id.*

## APPLICABLE LAW

35. Bankruptcy Code § 502(c) provides, in pertinent part, that "[t]here shall be estimated for purpose of allowance under this section . . . any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case . . . ." 11 U.S.C. § 502(c)(1). Estimation "provides a means for a bankruptcy court to achieve reorganization, and/or distribution on claims, without awaiting the results of [potentially protracted] legal proceedings." *In re Adelphia Bus. Solutions, Inc.* 341 B.R. 415,422 (Bankr. S.D.N.Y. 2003) (citing *In re Continental Airlines, Inc.*, 981 F.2d 1450, 1461 (5th Cir. 1993)); *In re Sneijder*, 407 B.R. 46, 55 (Bankr. S.D.N.Y. 2009) (holding that the court could estimate an unliquidated claim to assess the feasibility of a plan of reorganization).

36. "Furthermore, the Code requires estimation of all contingent or unliquidated claims which unduly delay the administration of the case." *In re Nat'l Gypsum Co.*, 139 B.R. 397, 405 (N.D. Tex. 1992) (internal quotations omitted); *see also Frito-Lay Inc. v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 10 F.3d 944,957 (2d Cir. 1993) (noting that bankruptcy court "must estimate" contingent and unliquidated claims); *In re RNI Wind Down Corp.* 369 B.R. 174, 191 (Bankr. D. Del. 2007); *In re Lane*, 68 B.R. 609,611 (Bankr. D. Haw. 1986) ("This duty [to estimate] is mandatory, since the language of [section 502(c)] states 'shall'").

37. Even absent a finding of undue delay or other requirement under Bankruptcy Code § 502(c), it is with a court's sound discretion to estimate a claim. See *In re RNI Wind Down Corp.*, 369 B.R. 174, 191 (Bankr. D. Del. 2007).

38. Any delay in resolving the Class Action claim would delay the administration of this case by preventing the Debtor from confirming a chapter 11 plan, distracting the Debtor's

officers and employees from efficiently managing the Debtor's business operations, and further increasing the Debtor's legal fees and expenses. *See In re Nova Real Estate Inv. Trust*, 23 B.R. 62, 65 (Bankr. E.D. Va. 1982); *In re Fox*, 64 B.R. 148, 150 (Bankr. N.D. Ohio 1986).

39. A chapter 11 "reorganization must be accomplished quickly and efficiently." *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 137 (3d Cir. 1982); *In re Kaplan,* 186 B.R. 871, 874 (D.N.J. 1995) (citing *Bittner*, 691 F.2d 134). Aims of the Bankruptcy Code furthered by estimation include (i) not unduly delaying the closing of the bankruptcy case, and (ii) the protection of creditors. *Bittner*, 691 F.2d at 136-37; *Ford v. Durkay*, 967 F.2d 1047, 1052 (5th Cir. 1992). By removing the need to wait for the results of outside lawsuits, estimation achieves the goal of moving a bankruptcy case toward its conclusion at a quickened pace that may not be possible otherwise. *See In re Adelphia Bus. Solutions, Inc.* 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003) (recognizing that it would be "inappropriate to hold time-consuming proceedings which would defeat the very purpose of 11 U.S.C. § 502(c)(1) to avoid undue delay); *Ford*, 967 F.2d at 1052. Creditors are protected, among other ways, by decreased administrative expenses, prompt distribution on their claims for which interest does not accrue after filing, increases in the ultimate distribution by minimization of the obstacles companies in bankruptcy face, and promotion of a "fair distribution through a realistic assessment of uncertain claims." *Bittner*, 691 F.2d at 136-37; *Ford*, 967 F.2d at 1052.

**Methods for Estimation**

40. A court may estimate the approximate value of a claim using "whatever method is best suited to the circumstances" at issue and recognizing that absolute certainty is not possible. *In re Brints Cotton Marketing, Inc.* 737 F.2d 1338, 1341 (5th Cir. 1984); *see also Maxwell v. Seaman Furniture Co. (In re Seaman Furniture Co. of Union Square, Inc.)* 160 B.R. 40, 42 (S.D.N.Y. 1993) ("When estimating claims, bankruptcy courts may use whatever method is best suited to the contingencies of the case, so long as the procedure is consistent with the fundamental policy of Chapter 11 that a reorganization must be accomplished quickly and

efficiently.").

41.     Although the court is bound by the legal rules that govern the ultimate value of the claim, it has wide discretion in establishing the method to be used to arrive at an estimate of the value of the claim. *See In re Chemtura Corp.*, 448 B.R. 635, 648-49 (Bankr. S.D.N.Y. 2011) ("The court is bound by the legal rules that may govern the ultimate value of the claim . . . [but] there are no other limitations on the court's authority to evaluate the claim save those general principles which should inform all decisions made pursuant to the [Bankruptcy Code]."); *In re Windsor Plumbing Supply Co. Inc.*, 170 B.R. 503, 521 (Bankr. E.D.N.Y. 1994) (advocating use of probabilities in estimation of claims rather than more simplistic all or nothing approach); *see also Bittner*, 691 F.2d at 135 (estimation requires only "sufficient evidence on which to base a reasonable estimate of the claim"); *In re Baldwin-United Corp.*, 55 B.R. 885, 898-99 (Bankr. S.D. Ohio 1985) (estimation "does not require that the judge be clairvoyant").

42.     Bankruptcy courts have wide discretion in choosing the process for estimating a claim. The methods used by courts include summary trials (*Baldwin*, 55 B.R. at 889), a review of written submissions of proposed facts (*Windsor,* 170 B.R. at 517), and a review of the pleadings and briefs. *In re Lane*, 68 B.R. 609, 613 (Bankr. D. Haw. 1986); *In re Apex Oil Corp.* 92 B.R. 843, 845 (Bankr. E. D. Mo. 1998) (applying summary trial brief on each claim subject to estimation). Whatever procedure the bankruptcy court chooses to estimate a claim, it must be consistent with the policy underlying chapter 11, that a "reorganization must be accomplished quickly and efficiently." *Bittner*, 691 F. 2d at 137 (citing 124 Cong. Rec. H 11101-H 11102 (daily ed. Sept. 28 1978); *see also Maxwell v. Seaman Furniture Co. (In re Seaman Furniture Co. of Union Square, Inc.*) 160 B.R. 40, 42 (S.D.N.Y. 1993).

43.     In *Bittner*, the court found that the evaluation of a claim and the estimation of its value may be performed by whatever means the court feels is appropriate, except that the value of the claim is ultimately governed by the law governing the underlying action and associated damages. *Id.* Similarly, courts have held that

> [a]n estimator of claims must take into account the likelihood that each party's version might or might not be accepted by a trier of fact. The estimated value of a claim is then the amount of the claim diminished by probability that it may be sustainable only in part or not at all.  Recognizing that the magnitude of recovery is to a large extent dependent upon the individual backgrounds of the triers of the facts, what we are given to deal with is a range of possible awards which we must first turn into a range of probable awards running from zero to the full amount of the claim. An expected value can then be found by multiplying a number of possible recovery values by the probability of their occurrence and taking the sum of these products.

*In re Thomson McKinnon Securities, Inc.*, 191 B.R. 976, 990 (Bankr. S.D.N.Y. 1996) (citing *In re Windsor Plumbing Supply Co. Inc.*, 170 B.R. 503, 521 (Bankr. E.D.N.Y. 1994)); *accord In re Farley, Inc.*, 146 B.R. 748, 753-54 (Bankr. N.D. Ill. 1992)); *see also See In re Adelphia Bus. Solutions, Inc.* 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003) ("The estimated value of a claim is then the amount of the claim diminished by [the] probability that it may be sustainable only in part or not at all.") (citing to *In re Ralph Lauren Womenswear*, 197 B.R. 771 (Bankr. S.D.N.Y. 1996)).

44.     Here, estimation is critical because an expensive jury trial before Judge Rakoff can only produce a finite number of results: (i) finding of no liability; (ii) finding of liability, and no damages; or (iii) finding of liability and a certain damage award.  Under the first two scenarios, the trial would constitute a waste of estate resources.  Under the third scenario, assuming a damage award of $1 million or less, the Debtor will have spent approximately $750,000.00 or more in additional legal fees and expenses related to the Class Action, only to determine that it owes the Class Action plaintiffs $1 million.  Under those circumstances, it is clearly far more beneficial to all parties, and preferable to the Debtor, for this Court conduct a less expensive, more efficient, estimation proceeding so that the Debtor can be in a better position to pay the $1 million claim under a chapter 11 plan.  Further, it is unlikely that Citibank will fund the legal fees and expenses associated with a jury trial.

**Proposed Estimation Procedures**

45.     The Debtor proposes that the Court establish the following procedures with

respect to an estimation hearing:

- An estimation hearing will be scheduled by the Court.
- No additional discovery will be taken.
- No live testimony will be taken. The Court will be provided copies of all deposition transcripts. To the extent required by the Court, the Court will be provided with copies of the video tapes of all depositions.
- Each party will file and exchange copies of all briefs, exhibits and expert reports relevant to the estimation hearing.
- The parties will simultaneously submit one additional brief on the issue of estimating the Class Claim.

## **CONCLUSION**

46. The Class Claim poses an immediate threat to the Debtor's ability to maximize value in connection with its reorganization. The potential protracted jury trial and attendant distraction could derail the successful resolution of this chapter 11 case. *See* Fine Decl., ¶6. Therefore, estimation under Bankruptcy Code § 502(c) is appropriate.

47. Further, the holders of the Class Claim cannot meet their substantial burden of proving liability or damages. Thus, given the strength of the Debtor's defenses to the Class Claim, the Class Claim should be estimated at zero.

48. The Debtor has served notice of this Motion, on: (i) all of the Debtor's creditors; (ii) counsel to the committee of unsecured creditors, if one is appointed; (iii) counsel to the Class Action plaintiffs; (iv) all parties whom or which have filed a notice of appearance in this case; (v) the Office of the United States Trustee for Region 2; and (vi) counsel to Citibank, N.A., the Debtor's secured creditor.

49. No previous request for the relief sought herein has been made by the Debtor to this or any other Court.

**WHEREFORE**, the Debtor respectfully requests that the Court (i) estimate the Class Action claim, (ii) enter an order substantially in the form annexed hereto as **Exhibit C** establishing estimation procedures, and (iii) grant the Debtor such other and further relief as this Court deems proper.

Dated: Jericho, New York
      June 6, 2014

**SILVERMANACAMPORA LLP**
Proposed Attorneys for Kangadis Food Inc.

By: s/ Adam Rosen
    Adam L. Rosen
Member of the Firm
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300