UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

KANGADIS FOOD INC.                                    Chapter 11
  d/b/a The Gourmet Factory,
                                                      Case No. 14-72649 (REG)

                    Debtor.
-------------------------------------------------------------x


# FIRST AMENDED PLAN OF REORGANIZATION
# FOR KANGADIS FOOD INC.
# <u>UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>


**SILVERMANACAMPORA LLP**
Attorneys for Kangadis Food Inc.
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Adam L. Rosen
Sheryl P. Giugliano
Brian Powers


Dated: October 9, 2014

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

KANGADIS FOOD INC.                                    Chapter 11
  d/b/a The Gourmet Factory,
                                              Case No. 14-72649 (REG)

                          Debtor.
-----------------------------------------------------------x

## FIRST AMENDED PLAN OF REORGANIZATION
## FOR KANGADIS FOOD INC.
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

      This First Amended Plan of Reorganization is proposed and filed by the above-captioned debtor Kangadis Food Inc. pursuant to chapter 11 of the Bankruptcy Code.[1] The Plan provides for the reorganization and restructuring of the Debtor, the payment of Allowed Claims consistent with the distribution scheme set forth in the Bankruptcy Code, and procedures for the resolution of Disputed Claims. The Plan provides that holders of Allowed Claims against the Debtor will receive distributions of Cash in full satisfaction of their Allowed Claims, as set forth below.

## ARTICLE I

## DEFINITIONS

      For purposes of the Plan, the following terms shall have the meanings set forth below. Terms used in this Plan which are defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth in the Bankruptcy Code or the Bankruptcy Rules unless defined in this Plan. The meaning of the defined terms shall be equally applicable to the singular and plural forms of the terms defined, unless a different meaning is clearly required by and explained in the text.

      1.01    "Administrative Expense" shall mean any cost or expense of administration of the Chapter 11 Case entitled to priority in accordance with the provisions of Bankruptcy Code §§503(b) and 507(a)(1), including, without limitation: (i) Fee Claims; (ii) Claims relating to goods received by the Debtor within twenty (20) days before the Petition Date in the ordinary course of the Debtor's business; and (iii) any actual, necessary costs and expenses of preserving the Debtor's Estate and of operating the Debtor's business (but only to the extent they are due or payable on or before the Effective Date).

      1.02    "Affiliate" shall have the meaning set forth in Bankruptcy Code §101(2).

      1.03    "Affiliate Claim" shall mean any Claim of an Affiliate of the Debtor, including without limitation, claims for indemnification, reimbursement, or contribution asserted by T. Kangadis, Aristidis Kangadis, Andromahi Kangadis, or KFM.

---

[1] All capitalized terms used but not defined in the text of this Plan shall have the meanings set forth in Article I of the Plan.

1.04    "Allowed" shall mean a Claim, other than an Administrative Expense or Interest in the Debtor, which is: (i) listed in the Debtor's Schedules filed in the Chapter 11 Case as of the Effective Date, and not listed in the Schedules as disputed, contingent, unliquidated or unknown and as to which no objection to the allowance thereof is filed on or prior to the Objections Bar Date; (ii) set forth in a proof of Claim timely and properly filed in the Chapter 11 Case on or before the date fixed by the Bankruptcy Court (or by applicable rule or statute) as the last day for filing such proof of Claim, or late filed with leave of the Bankruptcy Court after notice and opportunity for hearing given to counsel to the Debtor, and as to which no objection to the allowance thereof is filed on or prior to the Objections Bar Date; or (iii) determined to be allowed by a Final Order of the Bankruptcy Court.  To the extent permitted under Bankruptcy Code §506(b), an Allowed Claim shall include unpaid interest on the Claim and any reasonable unpaid fees, costs or charges provided for under the agreements under which such Claim arose. Any Claim which has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered an Allowed Claim and shall be expunged without further action by the Debtor, or the Reorganized Debtor.

1.05    "Allowed Administrative Expense" shall mean all or that portion of any Administrative Expense which has been Allowed by a Final Order of the Bankruptcy Court.

1.06    "Allowed General Unsecured Claim" shall mean any Allowed Claim that is not an Allowed Administrative Expense, Allowed Fee Claim, Allowed Secured Claim, Allowed Priority Tax Claim, Allowed Priority (Non-Tax) Claim, or Affiliate Claim.

1.07    "Allowed Priority Claim" shall mean any Allowed Claim or portion thereof entitled to priority under Bankruptcy Code §§507(a)(3) through (a)(6).

1.08    "Allowed Secured Claim" shall mean that portion of an Allowed Claim which is secured by a valid perfected lien on property of the Debtor, to the extent of the value of the interest of the holder of such Allowed Secured Claim in the property of the Debtor as determined by the Bankruptcy Court pursuant to Bankruptcy Code §506(a), together with interest, fees, costs and charges to the extent allowed by the Bankruptcy Court under Bankruptcy Code §506(b).

1.09    "Allowed Priority Tax Claim" shall mean any Allowed Claim or portion thereof entitled to priority under Bankruptcy Code §507(a)(8).

1.10    "Avoidance Actions" shall mean any and all claims, suits and causes of action now held or hereafter acquired by the Debtor, its Estate, the Reorganized Debtor, or the Debtor's creditors (a) under Bankruptcy Code §§544, 547, 548, 549 or 550, and (b) any transferee of a transfer avoidable under Bankruptcy Code §549 received from the Debtor from and after the Petition Date, but prior to the Effective Date.

1.11    "Bankruptcy Code" shall mean title 11 of the United States Code, as amended.

1.12    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Eastern District of New York, in which the Debtor's Chapter 11 Case is pending, and the United States District Court for the Eastern District of New York to the extent that in respect of the Chapter 11 Case the District Court may have withdrawn reference, shall have determined to exercise original jurisdiction, or shall have sole authority to enter a final order or judgment.

1.13    "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure.

1.14    "Bursor & Fisher" shall mean the law firm of Bursor & Fisher, P.A. which has been retained by the plaintiffs in the Class Action to pursue the Class Claim.

1.15    "Business Day" shall mean any day other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

1.16    "Cash" shall mean cash and cash equivalents, and other readily marketable securities or instruments, including, but not limited to, bank deposits, checks and other similar items.

1.17    "Cash Collateral Order" shall mean the Bankruptcy Court's orders authorizing the Debtor to use Citibank's cash collateral and providing related relief.

1.18    "Chapter 11 Case" shall mean the Debtor's chapter 11 case filed in the Bankruptcy Court, Case No. 14-72649 (REG).

1.19    "Citibank" shall mean Citibank, N.A., or the new lender that replaces Citibank as the Debtor's secured lender.

1.20    "Citibank Secured Claim" shall mean the Allowed Secured Claim of Citibank, which is secured by a valid first-priority lien on substantially all of the Debtor's assets.

1.21    "Claim" shall mean a claim against the Debtor, as defined in Bankruptcy Code §101(5).

1.22    "Claimant" shall mean the holder of a Claim.

1.23    "Class" shall mean any class into which Allowed Claims and Allowed Interests are classified pursuant to Article II of the Plan.

1.24    "Class Action" shall mean, collectively, (i) the action pending in the U.S. District Court for the Southern District of New York titled "Joseph Ebin, Yeruchum Jenkins, et al. v. Kangadis Food Inc., d/b/a The Gourmet Factory" (Index No. 13 CV 2311 (JSR)), and (ii) the action entitled "Frank Toscano v. Kangadis Food Inc., d/b/a/ The Gourmet Factory", pending in the U.S. District Court for the Southern District of New York (Index No. 13 CV 5944 (JSR)).

1.25    "Class Action Fund" shall mean (i) one-half of any portion of the Effective Date Payment remaining after payment in full of all Allowed Administrative Claims, and (ii) quarterly payments, beginning June 30, 2015, of up to $100,000.00 for two (2) years after the Effective Date to be paid to the Class Administrator for the benefit of the holders of Allowed Class 4 Claims, including any claims of Bursor & Fisher in the Class Action.

1.26    "Class Action Members" shall mean the individuals who are part of the class represented by the plaintiffs in the Class Action.

1.27    "Class Administrator" shall mean Angeion Group who has been retained by Bursor & Fisher, P.A. to act as the claims administrator in connection with the Class Action.

1.28    "Class Claim" shall mean the Allowed Claims of the plaintiffs in the Class Action, if any, including without limitation, the claims of the Class Action Members, any attorneys' fees and costs related to the Class Action which are alleged to be due to Bursor & Fisher, any other professional, agent, or administrator retained by the plaintiffs in the Class Action or retained by Bursor & Fisher, and the fees and costs of Class Administrator.

1.29    "Confirmation Date" shall mean the date the Confirmation Order is entered in the Chapter 11 Case.

1.30    "Confirmation Hearing" shall mean the hearing or hearings held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

AROSEN/1548363.8/063637

1.31    "Confirmation Order" shall mean an Order of the Bankruptcy Court confirming the Plan in accordance with Bankruptcy Code §1129.

1.32    "Creditor" shall have the meaning set forth in Bankruptcy Code §101(10).

1.33    "Debtor" shall mean Kangadis Food Inc., as debtor and debtor-in-possession in the Chapter 11 Case.

1.34    "Disallowed Claim" shall mean any Claim or portion of a Claim which has been disallowed by a Final Order of the Bankruptcy Court.

1.35    "Disputed Claim" shall mean any Claim, proof of which was timely and properly filed, and (a) which is listed on the Schedules as unliquidated, disputed, or contingent, and which has not been resolved by written agreement between the Debtor and the Claimant or by an order of the Bankruptcy Court, (b) which is subject to a dispute to the extent that the Debtor or the Reorganized Debtor has asserted a claim against the holder of the Disputed Claim, or (c) as to which the Debtor has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order.  Prior to the filing of an objection to a Claim, or the expiration of the time within which to object to such Claim set forth in the Plan or otherwise established by order of the Bankruptcy Court, for purposes of the Plan, a Claim shall be considered a Disputed Claim if (x) the amount of the Claim specified in the proof of Claim exceeds the amount of the Claim scheduled by the Debtor as other than disputed, contingent or unliquidated, or (y) the Claim is not listed on the Schedules.

1.36    "Disputed Claims Reserve" shall mean the reserves to be established by the Debtor or the Reorganized Debtor on account of Disputed Administrative Expenses Claims, Disputed Priority Claims, and Disputed Unsecured Claims to be used to make pro rata Distributions to holders of Disputed Claims and Undetermined Claims in the event they become Allowed Claims. No Disputed Claims Reserve will be established with respect to the Class Claim, or any Claim filed by a consumer which is based on damages for the alleged mislabeling of the Debtor's products.

1.37    "Distribute" or "Distribution" shall mean a payment by the Debtor, the Reorganized Debtor, or the Class Administrator under the terms of the Plan.

1.38    "Distribution Date" shall mean any date, subsequent to the Effective Date, on which a Distribution under the Plan is to be made to the holders of Allowed Claims.

1.39    "Effective Date" shall mean the first day on which the Confirmation Order has become a Final Order and on which all of the conditions to the Effective Date in the Plan have been satisfied or waived.

1.40    "Effective Date Payment" shall mean up to $1,082,000.00 in Cash to be deposited by the Debtor, no later than two (2) days prior to the Confirmation Date, into a separate account, which will be used to pay Administrative Expenses in full, and any remaining portion of the $1,082,000 will be used to fund the GUC Fund and the Class Action Fund under the Plan.

1.41    "Estate" shall mean the Debtor's chapter 11 estate created on the Petition Date under Bankruptcy Code §541.

1.42    "Estimation Order" shall mean an order of the Bankruptcy Court estimating for voting or distribution purposes, under Bankruptcy Code §502(c), the allowed amount of any Claim in the Chapter 11 Case, including without limitation the Class Claim.  An Estimation Order may include the Confirmation Order if the Confirmation Order grants the same relief that would have been granted in a separate Estimation Order.

1.43    "Fee Claims" shall mean claims by professionals retained by the Debtor during the Chapter 11 Case for the payment of fees and the reimbursement of expenses incurred prior to the Effective Date.

1.44    "Final Order" shall mean: (i) an order or a judgment of the Bankruptcy Court; or (ii) a stipulation or other agreement entered into which is "so ordered" by the Bankruptcy Court, the operation or effect of which has not been reversed, stayed, modified or amended and as to which (x) any appeal that has been taken has been finally determined or dismissed, or (y) the time to appeal or seek reconsideration has expired by reason of statute or otherwise and as to which no appeal or petition for review, *certiorari* or reconsideration has been taken or is pending (or if such appeal or petition has been granted, it has been finally decided), as a result of which such order, judgment, stipulation or agreement shall have become final in accordance with applicable law.

1.45    "General Unsecured Claim" means an Allowed Claim that is not an Administrative Expense, a Priority (Non-Tax) Claim, Priority Tax Claim, Fee Claim, Affiliate Claim, or Secured Claim.

1.46    "GUC Fund" shall mean (i) one-half of any portion of the Effective Date Payment remaining after payment in full of all Allowed Administrative Claims, and (ii) quarterly payments, beginning June 30, 2015, of up to $100,000.00 for two (2) years after the Effective Date, to be paid by the Debtor from cash flow and used to pay Allowed Class 5 Claims on a Pro Rata basis in accordance with the Plan.

1.47    "Interest" shall mean any rights of a shareholder or holder of a membership interest in respect of an equity interest in the Debtor.

1.48    "Kangadis Contribution" shall mean the Cash and other consideration to be provided by T. Kangadis, but only in the event that holders of Allowed Claims in Classes, 1, 2, 3, 4, and 5 are not paid in full, including: (i) payment to the Debtor of Cash in the amount of up to $900,000.00; (ii) the continued maintenance of the Kangadis Guaranties after the Confirmation Date in favor of Citibank, or the lender which refinances Citibank's debt; and (iii) the subordination in right of payment of the Affiliate Claims. The Kangadis Contribution shall be used to fund the Debtor's Effective Date Payment to the extent there is a shortfall. In addition, $100,000.00 will be paid to the Debtor in consideration for the settlement of all claims the Debtor's estate may have against T. Kangadis, Aristidis Kangadis, and Andromahi Kangadis, and shall be paid to the Debtor whether or not the Kangadis Contribution is required to be paid under the Plan.

1.49    "Kangadis Guaranties" shall mean the guaranties provided by T. Kangadis and Aristidis Kangadis to Citibank as additional security for the Debtor's obligations to repay the Citibank Secured Claim, and under any exit financing to be provided by Citibank, or the lender which refinances Citibank's debt.

1.50    "KFM" shall mean Kangadis Family Management LLC, a non-debtor Affiliate which owns the real property and building from which the Debtor operates its business pursuant to a lease agreement.

1.51    "Lien" shall have the meaning set forth in Bankruptcy Code §101(37).

1.52    "Objections Bar Date" shall mean the deadline for the Debtor or the Reorganized Debtor to file objections to Claims, which deadline shall be the first business day that is one hundred and twenty (120) days after the Effective Date of the Plan.

1.53    "Person" shall have the meaning set forth in Bankruptcy Code §101(41).

1.54    "Petition Date" shall mean June 6, 2014.

AROSEN/1548363.8/063637

1.55    "Plan" shall mean this First Amended Plan of Reorganization, as it may be further amended or modified.

1.56    "Priority (Non-Tax) Claims" shall mean any Claim that is entitled to priority status in accordance with Bankruptcy Code §507(a), other than Priority Tax Claims and Administrative Expenses.

1.57    "Priority Tax Claims" shall mean any Claim for taxes entitled to priority status in accordance with Bankruptcy Code §§502(i) or 507(a)(8), but specifically excludes any penalty assessed with respect to such taxes.

1.58    "Pro Rata Share" shall mean the proportion that the Allowed Claim bears to the sum of all Allowed Claims, Disputed Claims and Undetermined Claims of that particular Class.

1.59    "Released Parties" shall have the meaning set forth in Article X of the Plan.

1.60    "Released Claims" shall mean the claims released under Article X of the Plan.

1.61    "Reorganized Debtor" shall mean the Debtor after the Effective Date.

1.62    "Schedules" shall mean the schedules of assets and liabilities, lists and statement of financial affairs and executory contracts filed by the Debtor with the Bankruptcy Court, as they may be amended pursuant to the Bankruptcy Rules.

1.63    "SilvermanAcampora" shall mean the law firm of Silverman Acampora LLP, the Debtor's bankruptcy attorneys.

1.64    "T. Kangadis" shall mean Themistoklis Kangadis, the Chief Executive Officer and President of the Debtor.

1.65    "Unclaimed Property" shall mean any Cash (together with any interest earned thereon) unclaimed on the later of the 180th day following the Effective Date or the last Distribution Date. Unclaimed Property shall include checks (and the funds represented thereby): (i) which have been returned as undeliverable without proper forwarding addresses; (ii) which have not been paid; or (iii) which were not mailed or delivered because of the absence of a proper address for the Claimant.

1.66    "Undetermined Claim" shall mean any Claim that is (i) a Disputed Claim or (ii) an unliquidated or contingent Claim.

1.67    "Unsecured Creditor" shall mean the holder of an Unsecured Claim.

1.68    "U.S. Trustee" shall mean the Office of the United States Trustee for Region 2.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    General Rules of Classification.  A Claim or Interest is classified in a particular Class for voting and distribution purposes only to the extent the Claim or Interest qualifies within the description of that Class, and is classified in other Classes to the extent the Claim or Interest qualifies within the description of such Classes.

2.02    Administrative Expenses and Priority Tax Claims.  Administrative Expenses and Priority Tax Claims have not been classified and are excluded from the Classes of Claims in accordance with Bankruptcy Code §1123(a)(1).

2.03    Satisfaction of Claims and Interests. The treatment to be provided for Allowed Claims and Interests under this Plan and the consideration provided under this Plan shall be in

full satisfaction, settlement, release and discharge of all Claims and Interests against the Debtor and its property.

2.04    Bar Dates for Claims. Pursuant to the Bankruptcy Court's Order, dated June 25, 2014 (ECF Doc. No. 68), all non-governmental unit Claims against the Debtor, including claims under Bankruptcy Code §503(b)(9) must be filed on or before August 5, 2014, and all Claims of governmental units must be filed on or before December 3, 2014.  A supplemental bar date of September 8, 2014 was established for Persons who opted-out of the Class Action. Claims arising from the rejection of executory contracts and unexpired leases shall be governed by the specific orders of the Bankruptcy Court regarding the assumption or rejection of executory contracts and unexpired leases and Article VI of the Plan.

2.05    Bar Date for Fee Claims. The Confirmation Order, or the order scheduling the Confirmation Hearing, shall provide a deadline for the filing of requests for payment of Fee Claims incurred prior to the Confirmation Date.  Any application of Bursor & Fisher for attorneys' fees and reimbursement of expenses to be paid as part of the Class Claim must be filed within that deadline. Any Person that fails to file an application for the payment of professional fees and expenses on or before the time and date established in the Confirmation Order or the order scheduling the Confirmation Hearing shall be forever barred from seeking payment or reimbursement from the Debtor, its Estate or the Reorganized Debtor.

2.06    Acceptance of Classification.  Any holder of a Claim or Interest who fails to object in writing to the classification of Claims and Interests provided in the Plan, and who has not filed an objection with the Bankruptcy Court and served the objection upon counsel to the Debtor, counsel to Citibank, and the U.S. Trustee at least ten (10) days prior to the Confirmation Hearing shall be deemed to have accepted the classification set forth in the Plan.

2.07    Classification.  For purposes of the Plan, all Allowed Claims shall be placed in the following Classes:

> ➢ Class 1 (Allowed Priority (Non-Tax) Claims)
> ➢ Class 2 (Allowed Citibank Secured Claim)
> ➢ Class 3 (Other Secured Claims)
> ➢ Class 4 (Allowed Class Claim)
> ➢ Class 5 (General Unsecured Claims)
> ➢ Class 6 (Affiliate Claims)
> ➢ Class 7 (Interests in the Debtor)

## ARTICLE III

### TREATMENT OF CLASSES

3.01    Administrative Expenses.  Administrative Expenses are not impaired.  Except with respect to Administrative Expenses Allowed under Bankruptcy Code §503(b)(9), which shall be paid as soon as reasonably practicable after the Effective Date or upon such other terms as may be agreed to by the holder thereof and the Debtor, Allowed Administrative Expenses, including Fee Claims, shall be paid by the Debtor or the Reorganized Debtor on the later to occur of (a) the Effective Date, and (b) the date such Claim becomes Allowed by a Final Order of the Bankruptcy Court, or as soon as practicable thereafter, or upon such other terms as may be agreed to by the holder thereof and the Debtor.  In the event of any subsequent conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, all payments on account of any Allowed Administrative Expenses shall be deemed to have been

made in the ordinary course of the Debtor's business and shall not be deemed to be avoidable transfers under Bankruptcy Code §547.

3.02    U.S. Trustee Fees.  Statutory fees, and any applicable interest thereon, are all fees payable pursuant to Chapter 123 of Title 28, United States Code, including, but not limited to, all fees required to be paid by 28 U.S.C. §1930(a)(6) ("**U.S. Trustee Fees**").  U.S. Trustee Fees will accrue and be timely paid until the Case is closed, dismissed, or converted to another chapter under the Bankruptcy Code.  Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid in full on the Effective Date of the Plan.

3.03    Priority Tax Claims.  Priority Tax Claims are not impaired.  All Allowed Priority Tax Claims shall be paid over a five (5) year period in accordance with Bankruptcy Code §1129(a), at the prime rate of interest as published by the Wall Street Journal, or similar publication. Holders of Priority Tax Claims shall not be entitled to vote on the Plan. The deadline by which governmental entities were entitled to file tax claims is December 3, 2014.

3.04    Class 1 Priority (Non-Tax) Claims.  Allowed Priority (Non-Tax) Claims shall be paid over a 12-month period following the Effective Date, in full, without interest, and may be pre-paid by the Debtor. Holders of Class 1 Claims are impaired and shall be entitled to vote on the Plan.

3.05    Class 2 Citibank Secured Claim.  The Class 2 Claim shall be the Allowed Secured Citibank Claim, which is secured by a first-priority lien on substantially all of the Debtor's assets. On or before thirty (30) days following the Effective Date, Citibank's Secured Claim shall be paid in full utilizing the proceeds of a new credit facility provided by Citibank to the Debtor or the Reorganized Debtor, or within ninety (90) days after the Effective Date by utilizing the proceeds of a new loan to be obtained by the Debtor. To the extent that, on the Effective Date, the Debtor is holding Cash in excess of the amounts required to fund the payments required on the Effective Date, the Debtor may pay down the principal amount of the Class 2 Claim.  The Class 2 Claim is impaired, and Citibank is entitled to vote on the Plan.

3.06    Class 3 Other Secured Claims. The Class 3 Claims consist of Allowed secured claims, other than the Citibank Secured Claim, to the extent that they are Allowed Secured Claims. On the Effective Date, holders of Allowed Class 3 Claims will be paid 100% of their Allowed Claims or shall retain their Liens against the Debtor's assets in the same priority and with the same enforceability as existed on the Petition Date, and receive deferred Cash payments totaling the Allowed amount of such claim of a value, as of the Effective Date, of such holder's Allowed Claim. Class 3 Claims are not impaired.

3.07    Class 4 Class Claim. The Class 4 Claim consists of the Allowed Class Claim, if any, which will be determined by an estimation proceeding before the Bankruptcy Court. To the extent that the Bankruptcy Court determines that the Class 4 Claim is an Allowed Claim, the Class Administrator shall receive, on behalf of the holders of Class 4 Claims and Bursor & Fisher, the Cash and other payments to be deposited into the Class Action Fund, in accordance with the provisions of the Plan, in full satisfaction of Allowed Class 4 Claim, and any claims of Bursor & Fisher. All Distributions made to the holders of the Class 4 Claims shall be made to the Class Administrator. Any attorneys' fees and expenses to be paid to Bursor & Fisher shall be paid as part of the Class 4 Claim and shall be subject to the approval of the Bankruptcy Court pursuant to Bankruptcy Rule 7023, and Rule 54(d) of the Federal Rules of Civil Procedure.

Any portion of the Class Claim which represents, or is based upon, a finding of punitive damages, or a penalty shall be disallowed and not paid as part of the Class Claim.

The Class Administrator shall be responsible for receiving, processing and delivering all Distributions to the Class Action Members, and to Bursor & Fisher. The Class Administrator will

provide appropriate notices to the Class Action Members, issue payments to the Class Action Members, withhold any applicable taxes related to the payments made to Class Action Members, process returned notices and Distribution checks with respect to Class Action Members, and be responsible for determining the identity of the Class Action Members. On the Effective Date, but only in the event that the holders of Class 4 Claims are entitled to receive Distributions under the Plan, the Debtor shall pay a one-time fee of $10,000.00 to the Class Administrator to compensate the Class Administrator for its obligation to receive, process, and deliver Distributions to holders of Class 4 Claims. Class 4 Claims are impaired and are entitled to vote on the Plan.

3.08    Class 5 General Unsecured Claims. Class 5 Claims are comprised of the Allowed Claims of General Unsecured Creditors. Each holder of an Allowed General Unsecured Claim shall receive Distributions of its Pro Rata Share of the GUC Fund in full satisfaction of its Allowed Claim. Class 5 Claims are impaired and are entitled to vote on the Plan.

3.09    Class 6 Claims of Affiliates. Class 6 Claims consist of the Allowed Claims of KFM, T. Kangadis, Aristidis Kangadis, and Andromahi Kangadis. The payment of these claims shall be subordinated in right of payment to the payment of Class 1, 2, 3, 4 and 5 Claims under the Plan.

3.10    Class 7 Interests. Class 7 Interests shall be extinguished under the Plan.  In consideration for the Kangadis Contribution, on the Effective Date, T. Kangadis shall receive 100% of the Interests in the Reorganized Debtor which shall be issued in the form of new stock of the Reorganized Debtor. Except for T. Kangadis, no Class 7 Interest holder shall receive any Cash or property under the Plan.  Class 7 Interest holders are not entitled to vote and shall be deemed to reject the Plan. Class 7 Interests are impaired.

## ARTICLE IV

### CLAIMS AND INTERESTS IMPAIRED UNDER THE PLAN

4.01    Claims in Classes 1, 2, 4, 5 and 6, and Interests in Class 7, are impaired under the Plan. The holders of Claims in Classes 1, 2, 4, 5, and 6 are entitled to vote on the Plan. Claims in Class 3 are not impaired and shall be deemed to have accepted the Plan. Class 7 is deemed to reject the Plan.

4.02    Pursuant to Bankruptcy Code §1126(c), a Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the holders of Allowed Claims in such Class that vote on the Plan.

4.03    To the extent that any Class rejects the Plan, the Debtor intends to seek confirmation of the Plan in accordance with Bankruptcy Code §1129(b).

## ARTICLE V

### MEANS FOR IMPLEMENTATION OF THE PLAN

5.01    Payments on the Effective Date. No later than two (2) business days before the Confirmation Date, the Effective Date Payment, and if Class 4 and 5 Claims are not paid in full under the Plan, $500,000.00 of the Kangadis Contribution, shall be utilized to make the payments required by the Plan.

The payments under the Plan will be made from (a) Effective Date Payment, (b) the Cash derived from the Debtor's operations, and (c) the Kangadis Contribution. The Kangadis

AROSEN/1548363.8/063637

Contribution is comprised of (i) a $900,000.00 "new value" contribution being made in recognition of the fair market value of the stock in the Reorganized Debtor which is being issued to T. Kangadis, and (ii) a $100,000.00 settlement payment as consideration for the settlement and extinguishment of the Released Claims. In addition, as soon as practical after the Effective Date, KFM will repay the $684,573.00 debt which KFM owes to the Debtor.

Except for Allowed Administrative Claims held pursuant to Bankruptcy Code §503(b)(9), which shall be paid as soon as reasonably practicable after the Effective Date or upon such other terms as may be agreed to by the holder thereof and the Debtor, the Debtor shall have the Cash necessary to pay in full Allowed Administrative Claims, including Allowed Fee Claims (except to the extent that the holders of Administrative Expense or Fee Claims agree to different treatment), except as otherwise provided in the Plan, Allowed Priority (Tax) Claims and Priority (Non-Tax) Claims.

5.02    Payments after the Effective Date. To the extent necessary to pay Allowed Claims under the Plan, the Debtor will pay from its cash flow an aggregate of $200,000.00 per quarter for up to two (2) years, to be used to fund the GUC Fund and the Class Action Fund in accordance with the Plan.

5.03    Kangadis Contribution. The Kangadis Contribution will be made to satisfy the requirements to confirm the Plan under Bankruptcy Code section 1129, only if Class 4 and 5 Claims are not paid in full. The Kangadis Contribution represents the "new value" contribution required by the Bankruptcy Code in order for T. Kangadis to receive the issuance of 100% of the stock of the Reorganized Debtor. In addition, because the Debtor currently has the exclusive right to file a chapter 11 plan, the Debtor must provide an opportunity for third parties to offer greater consideration than the consideration being offered by the Kangadis Contribution in exchange for receiving issuance of 100% of the stock interests in the Reorganized Debtor. For purposes of evaluating competing offers for that stock interest, the Kangadis Contribution will be considered to have a value of $1 million based on the fact that (i) up to $900,000.00 in Cash will be contributed to the Debtor, (ii) the Kangadis Guaranties will continue to be maintained, and (iii) the payment of the Affiliate Claims will be subordinated in right of payment to the payment of Allowed Class 4 and 5 Claims..

Any Person interested in making an offer to purchase the 100% stock interest in the Reorganized Debtor shall (a) at least fifteen (15) days prior to the Confirmation Hearing, deliver a written offer to purchase the stock with a present value of at least $1,000,000.00 to SilvermanAcampora, (b) deliver a Cash deposit of at least $100,000.00 in certified funds, or by wire transfer, to SilvermanAcampora, and (c) provide SilvermanAcampora with written evidence that the offeror has sufficient Cash, or a written loan commitment from a reputable and insured financial institution in an amount sufficient, to satisfy the Citibank Secured Claim in full.

Prior to the Confirmation Hearing, the Debtor will consider any valid offers made pursuant to the above requirements to purchase the 100% stock interest in the Reorganized Debtor. If the Debtor determines that a valid offer is made for the stock in the Reorganized Debtor, then the Debtor will hold an auction of the stock interest at the Confirmation Hearing to determine the highest and best offer. If no competing offer is made in accordance with the above procedures, then the Kangadis Contribution will be considered to be a sufficient and adequate "new value" contribution.

5.04    Avoidance Actions. The Debtor may, in its sole discretion, pursue recoveries of any Avoidance Actions and will retain the recoveries or settlements obtained on account of the Avoidance Actions. Presently, the Debtor does not intend to pursue recovery of potential Avoidance Actions because the Debtor believes that (a) the aggregate amount of the recoverable transfers is relatively small; (b) the Debtor does not want to take positions which

would be adverse to its vendors and suppliers, and (c) the legal fees and costs associated with pursuing Avoidance Actions would not justify the possible benefits.

5.05    Reserves. On the Effective Date, or as soon thereafter as is reasonably practical, the Debtor shall establish and maintain adequate reserves for Disputed Claims, except that no reserve shall be required with respect to the Class Claim, or any individual claims filed by Class Action Members.

On the later to occur of (a) the Effective Date, and (b) the date such Claim becomes Allowed by a Final Order of the Bankruptcy Court, or as soon thereafter is reasonably practicable, the Debtor shall use available Cash to pay in full, or establish appropriate reserves for Allowed Administrative Expenses, including Allowed Fee Claims, except as otherwise agreed to by the holder thereof and the Debtor. The Debtor shall pay all Priority Tax Claims, and Priority (Non-Tax) Claims, in accordance with Article III of the Plan.

5.06    Investments by the Debtor.    All Cash held by the Debtor, whether held in investment accounts, bank accounts, any Disputed Claims Reserve, or any escrow accounts, shall be invested in accordance with Bankruptcy Code §345 in a financial institution that is an authorized depository under the U.S. Trustee Operating Guidelines.

5.07    Delivery of Distributions. Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim filed by such holder, or (b) the last known address of such holder if no proof of Claim is filed or if the Debtor has been notified in writing of a change of address.

The provisions regarding Distributions in this Plan shall govern Distributions made by the Debtor, or the Debtor's agents and attorneys. Distributions made by the Claims Administrator shall be made pursuant to the terms agreed to between the Claims Administrator and Bursor & Fisher, or the plaintiffs in the Class Action.

5.08    Undeliverable Distributions and Unclaimed Property. If any distribution made by the Debtor is returned as undeliverable, the Debtor may, in its sole discretion, make such efforts to determine the current address of the Holder of the Claim with respect to which the distribution was made, but no distributions to any Holder of an Allowed Claim will be made until the Debtor has determined the current address of the Holder of such Allowed Claim, at which time the distribution will be made without interest. The Debtor shall have sole discretion to determine how to make distributions in the most efficient and cost-effective manner.  Amounts in respect of any undeliverable distributions made by the Debtor shall be returned to, and held in trust by, the Debtor, until the distributions are claimed, or are deemed to be Unclaimed Property upon the expiration of six (6) months from the date of the return of the undeliverable distribution. Unclaimed Property shall be utilized by the Debtor to make distributions in accordance with the provisions of the Plan.

5.09    Record Date for Distributions.  Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the date of the entry of the Confirmation Order will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the date of the entry of the Confirmation Order. The Debtor shall have no obligation to recognize any transfer of any Claim occurring after the date of the entry of the Confirmation Order. In making any Distribution with respect to any Claim, the Debtor shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Person that is listed on the proof of Claim filed with respect thereto, or on the Schedules, as the holder thereof as of the close of business on the date of the

entry of the Confirmation Order, and upon such other evidence or record of transfer or assignment that are known to the Debtor as of the date of the entry of the Confirmation Order.

5.10    Distributions to Holders of Claims – Generally.

(a)    Distributions on Account of Allowed Claims Only.  Except as otherwise provided in this Plan, Disputed Claims shall not be entitled to any Distribution until such Disputed Claim becomes an Allowed Claim. All Claims of any Person from which property is sought by the Debtor, or the Reorganized Debtor, as applicable, under Bankruptcy Codes §§542, 543, 550, or 553, or that the Debtor, or the Reorganized Debtor, alleges is a transferee of a transfer that is avoidable under Bankruptcy Code §§522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) shall be disallowed if such Person or transferee has failed to turnover such property to the Reorganized Debtor.

(b)    Each Class Action Member shall receive Distributions made by the Claims Administrator from the Class Action Fund. Any proof of claim filed by an individual Class Action Member will be deemed expunged and disallowed as of the Effective Date.

(c)    Method of Cash Distributions.  Any payment of Cash to be made pursuant to the Plan will be in U.S. dollars and may be made by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.

(d)    Distributions on Non-Business Days.  Any payment or Distribution due on a day other than a Business Day may be made, without interest, on the next Business Day.

(e)    No Distribution in Excess of Allowed Amount of Claim.  Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution (of a value set forth herein or in the Disclosure Statement) in excess of the Allowed amount of such Claim.

(f)    Interest on Claims.  Except as specifically provided for in the Plan or the Confirmation Order, and except for Class 6 Claims which are subordinated under the Plan, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  No payment of interest shall be made to holders of Class 6 Claims until all Distributions have been made to holders of Class 4 and Class 5 Claims under the Plan. Interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim. Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be allowed to the extent that it is for postpetition interest or other similar charges.

(g)    Disputed Payments.  If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Debtor may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account or hold such Distribution in reserve until the disposition thereof shall be determined by Bankruptcy Court order, or by written agreement among the interested parties to such dispute.

(h)    Withholding Taxes.  Any federal or state withholding taxes or other amounts required to be withheld under any applicable law may be deducted and withheld from any Distributions under the Plan.  All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.  The Debtor may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by the Debtor to the appropriate authority. If the holder of an Allowed Claim fails to provide the information necessary to comply with any

withholding requirements of any governmental unit within ninety (90) days after the date of first notification to the holder of the need for such information, or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as Unclaimed Property herein or the amount required to be withheld may be so withheld and turned over to the applicable authority.

(i)  Time Bar to Cash Payments by Check.  Checks issued by the Debtor on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Requests for the reissuance of any check that becomes null and void pursuant to this Section may be made directly to the Debtor by the holder of the Allowed Claim to whom the check was originally issued.  Any Claim in respect of such voided check must be made in writing, on or before the later of the first anniversary of the Effective Date, or the six (6) month anniversary of the date on which the Distribution was made.  After that date, all Claims in respect of voided checks shall be discharged and forever barred and the proceeds of those checks shall be deemed Unclaimed Property in accordance with Bankruptcy Code §347(b) and be distributed as provided herein.

(j)  No Payments of Fractional Dollars.  Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

(k)  Minimum Distributions.  Notwithstanding anything herein to the contrary, the Debtor shall not be required to make distributions or payments of less than $25.00, and shall not be required to make partial distributions or payments of fractions of dollars. Any Holder of an Allowed Claim whose aggregate distribution under this Plan is less than $25.00 shall forfeit, at the option of the Debtor, such amount to, and such amount shall vest in, the Debtor for distribution in accordance with the terms of the Plan.

(l)  Setoff and Recoupment.  The Debtor may, but shall not be required to, setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature that the Debtor or the Estate may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor, the Estate, or the Reorganized Debtor, of any right of setoff, recoupment claims, rights or Avoidance Actions that the Debtor, the Estate, or the Reorganized Debtor, or any of their successors may possess against such holder. Any setoff or recoupment shall only be made after the affected creditor is provided not less than five days notice.

5.11  Quarterly Reports.  Until the Chapter 11 Case is closed, the Debtor shall file quarterly reports setting forth (a) the status of Distributions to holders of Allowed Class 5 Claims, and (b) the status of any Avoidance Actions.  The quarterly reports shall be filed on or before the 15th day of July, October, January and April. In addition, the Debtor shall maintain an accurate register of the General Unsecured Claims.

5.12  Vesting of Assets. As of the Effective Date, pursuant to provisions of Bankruptcy Code §§1141(b) and (c), all property and assets of the Debtor, except for the GUC Fund and the Class Action Fund, shall be transferred to and shall vest in the Reorganized Debtor free and clear of all Liens, Claims and Interests, except as otherwise expressly provided in this Plan, and the Confirmation Order.

5.13    Continuing Existence.    From and after the Effective Date, the Reorganized Debtor will continue in existence and shall continue normal operations of its business as a corporation under the applicable laws of the state of New York.

5.14    Debtor's Stock.  From and after the Effective Date, the existing stock interests of the Debtor shall be cancelled and extinguished, and the Debtor shall issue new stock to T. Kangadis who shall own 100% of the Reorganized Debtor's stock interests.

## ARTICLE VI

### EXECUTORY CONTRACTS AND LEASES

6.01    Any executory contract or unexpired lease of the Debtor which has not been assumed or rejected by Final Order of the Bankruptcy Court, or which is not the subject of a pending motion to assume or reject on the Confirmation Date, shall be deemed assumed by the Debtor on the Effective Date.

6.02    Any entity with a Claim that arises from the rejection of an executory contract or unexpired lease must file its Claim within thirty (30) days after the earlier of the date of the order rejecting the executory contract or unexpired lease and the Confirmation Date, and shall have the same rights as a Class 5 Claimant to the extent such Claim becomes an Allowed General Unsecured Claim.

## ARTICLE VII

### PROCEDURE FOR RESOLVING DISPUTED CLAIMS

7.01    Disputed Claim Reserves. Except as provided for below, the Debtor shall set aside and reserve for the benefit of each holder of a Disputed Claim an amount equal to the Distributions to which the holder of such Disputed Claim would be entitled if such Disputed Claim were an Allowed Claim, in an amount equal to the amount of such Claim as estimated by the Bankruptcy Court pursuant to an Estimation Order. Such reserved amounts, and the difference between the amount so reserved for each such Claim and the amount of federal, state and local taxes paid by the Debtor with respect to such Claim shall constitute the maximum Distribution amount to which the holder of such Claim may ultimately become entitled to receive.

The Debtor shall not be required to establish a Disputed Claim Reserve with respect to the Disputed Class Claim, or with respect to any claim filed by a consumer alleging damages relating to the alleged mislabeling of the Debtor's products. Any Distributions to the holders of the Class Claim shall be made in accordance with the Bankruptcy Court's Final Order estimating the Class Claim for distribution purposes.

7.02    Distributions to Holders of Allowed Claims. After the Effective Date, the Debtor shall make one or more Distributions to holders of Allowed Claims in accordance with the Plan.

(i)    Distributions on Disputed Claims.  No Distributions shall be made with respect to a Disputed Claim until the resolution of such dispute by agreement with the Debtor, the Reorganized Debtor, or Final Order.  On or as soon as reasonably practicable after the first Business Day of the next calendar quarter after a Disputed Claim becomes an Allowed Claim, the Debtor shall distribute to the holder thereof Cash, from the Disputed Claims Reserve, in an amount equal to the aggregate amount of Cash that would have been distributed

to such holder in respect of such Claim had such Claim been an Allowed Claim, in the amount in which it is ultimately allowed.

(ii)    Treatment of Excess Cash in Disputed Claims Reserve.  To the extent a Disputed Claim becomes a Disallowed Claim or is reclassified, any Cash previously reserved for such portion of such Disputed Claim shall be distributed in accordance with the Plan. To the extent all payments required under the Plan have already been made, Cash previously reserved for Disputed Claims shall be treated as Unclaimed Property in accordance with the terms of the Plan.

7.03    <u>Resolution of Disputed Claims</u>.    Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, after the Confirmation Date the Debtor shall have the right to make and file objections to all Claims, except the Class 2 Allowed Citibank Secured Claim, and shall serve a copy of each objection upon the holder of the Claim to which the objection is made, as soon as practicable, but in no event later than the Objections Bar Date.  From and after the Confirmation Date, all objections shall be litigated to a Final Order except to the extent the Debtor elects to withdraw any claim objection, or the Debtor and the claimant elect to compromise, settle or otherwise resolve any claim objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim on reasonable written notice to counsel to the Citibank, without approval of the Bankruptcy Court. A Disputed Claim as to which no objection is filed by the Objections Bar Date shall become an Allowed Claim.

7.04    <u>Procedure for Omnibus Objections to Claims</u>.    The Debtor is permitted to file omnibus objections to claims (an "**Omnibus Objection**") on any grounds, including but not limited to those grounds specified in Bankruptcy Rule 3007(d).    For claims that have been transferred, a notice shall be provided only to the person or persons listed as being the owner of such claim on the Debtor's claims register as of the date the Omnibus Objection is filed.  The notice of an Omnibus Objection shall include a copy of the relevant Omnibus Objection but not the exhibits thereto listing all claims subject to the objection thereby; rather, the notice shall (i) identify the particular claim or claims filed by the claimant that are the subject of the Omnibus Objection, (ii) provide a unique, specified and detailed basis for the objection, (iii) explain the proposed treatment of the claim, (iv) notify such claimant of the steps that must be taken to contest the objection, and (v) otherwise comply with the Bankruptcy Rules.

7.05    <u>Maintenance of Disputed Claims Reserve</u>.    To the extent that the property placed in a Disputed Claims Reserve consists of Cash, that Cash shall be deposited in an interest-bearing account in a financial institution that is an authorized depository under the U.S. Trustee Operating Guidelines. The Disputed Claims Reserve shall be closed and extinguished by the Debtor when all Distributions and other dispositions of Cash or other property required to be made under the Plan from such reserves will have been made in accordance with the terms of the Plan.

## ARTICLE VIII

### RETENTION OF JURISDICTION

8.01    The Bankruptcy Court shall retain jurisdiction over the Debtor and the Chapter 11 Case pursuant to chapter 11 of the Bankruptcy Code and for the purposes set forth in Bankruptcy Code §1127(b), including, without limitation, with respect to the following matters;

(a)    to enable the Debtor or the Reorganized Debtor, as applicable, to prosecute the Avoidance Actions;

(b)    to hear and determine all Avoidance Actions, any claim or cause of action belonging to the Debtor's estate, and any disputes concerning the classification, allowance, or estimation of any Claim;

(c)    to resolve any disputes concerning any funds held in the Disputed Claims Reserve;

(d)    to hear and determine all disputed issues relating to a security or ownership interest in any property of the Debtor's Estate, or in any proceeds thereof;

(e)    to hear and determine all Claims arising out of any agreement entered into by the Debtor after the Petition Date;

(f)    to recover all assets and property of the Debtor wherever located;

(g)    to alter, modify and amend the Plan pursuant to Bankruptcy Code §1127 or to remedy any defect, cure any omissions, or reconcile any inconsistency in the Plan or Confirmation Order as may be necessary to carry out the purpose and intent of the Plan, and to extent authorized by the Bankruptcy Code or Bankruptcy Rules;

(h)    to hear and determine such other matters as may be provided for in the Confirmation Order and for the purposes set forth in Bankruptcy Code §§1127(b) and 1142, or in Bankruptcy Rules 1019 and 3020(d);

(i)    to hear and determine all applications for compensation of professionals for services rendered and expenses incurred through the Confirmation Date, including the fees and expenses of Bursor & Fisher, and thereafter to hear and determine any objections to compensation of professionals;

(j)    to hear and determine any and all pending applications, adversary proceedings, contested matters and litigated matters;

(k)    to hear and determine any disputed issues with respect to the payments to be made under the Plan;

(l)    to enter orders that are necessary or appropriate to carry out the provisions of the Plan, including orders interpreting the provisions of the Plan;

(m)    to enter a Final Order or decree concluding the Debtor's Chapter 11 Case; and

(n)    to determine such other matters as may be provided for in the Confirmation Order, or as may be authorized under the provisions of the Bankruptcy Code.

## ARTICLE IX

### CONFIRMATION AND EFFECTIVE DATE

9.01    Conditions Precedent to Confirmation. The following are the conditions precedent to the Confirmation of the Plan:

(a)    The Effective Date Payment, and to the extent required by the Plan, a portion of the Kangadis Contribution, shall be deposited by the Debtor into a separate account;

(b)    All terms, conditions and provisions of the Plan are approved in the Confirmation Order;

(c)    The proposed Confirmation Order shall be in form and substance acceptable to the Debtor and the U.S. Trustee; and

AROSEN/1548363.8/063637

(d)     The Debtor shall have sufficient Cash, including use of the Kangadis Contribution, to pay in full all Allowed Administrative Expenses, including Fee Claims (except to the extent that holders of Allowed Fee Claims agree to different treatment of their claims), all Allowed Priority Claims, and U.S. Trustee fees, but excluding Allowed Administrative Expenses under Bankruptcy Code §503(b)(9), which shall be paid as soon as reasonably practicable after the Effective Date, or upon such other terms as may be agreed to by the holder thereof and the Debtor.

The conditions preceding set forth in subparagraphs (a), (b), (c) and (d) above, may be waived by the Debtor, only upon reasonable notice to the U.S. Trustee.

9.02     Conditions Precedent to the Effective Date.  The following are the conditions precedent to the Effective Date of the Plan:

(a)     The Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall have become a Final Order; and

(b)     The Debtor shall have utilized the Effective Date Payment to pay Allowed Administrative Claims in full and, to the extent that a portion of the Effective Date Payment remains, the Debtor will fund the GUC Fund and the Class Action Fund in accordance with the Plan.

## ARTICLE X

## DISCHARGE OF CLAIMS, RELEASES AND EXCULPATION

10.01 Interest Holders of the Debtor. **UPON THE EFFECTIVE DATE, NOTWITHSTANDING BANKRUPTCY CODE §1141(d)(1),  INTERESTS IN THE DEBTOR SHALL BE EXTINGUISHED, AND SUCH HOLDERS SHALL LOSE ALL RIGHTS UNDER BANKRUPTCY LAW AND NON-BANKRUPTCY LAW WITH RESPECT TO THOSE INTERESTS AS SET FORTH HEREIN. IN ACCORDANCE WITH THE PLAN, IN CONSIDERATION FOR THE KANGADIS CONTRIBUTION, T. KANGADIS SHALL RECEIVE 100% OF THE NEWLY ISSUED STOCK IN THE REORGANIZED DEBTOR. EXCEPT FOR T. KANGADIS, NO CLASS 7 INTEREST HOLDERS SHALL RECEIVE ANY CASH OR PROPERTY UNDER THE PLAN.**

10.02 Injunction.  **EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE CONFIRMATION DATE, ALL PERSONS, INCLUDING WITHOUT LIMITATION, THE CLASS ACTION MEMBERS AND BURSOR & FISHER, ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR PROCEEDING (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, THE DEBTOR'S PROPERTY, OR THE ESTATE BASED ON ANY ACT, OMISSION, TRANSACTION, OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED ON OR BEFORE THE CONFIRMATION DATE, INCLUDING RELATED TO THE FACTS ALLEGED IN THE CLASS ACTION AND ANY CLAIMS THAT ARE PROPERTY OF THE DEBTOR'S BANKRUPTCY ESTATE (COLLECTIVELY, THE "<u>RELEASED CLAIMS</u>"); PROVIDED THAT NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL ENJOIN THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE OR LOCAL AUTHORITY, FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTOR, OR ANY OF THE DEBTOR'S OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR THE DEBTOR'S PROPERTY, FOR ANY LIABILITY, INCLUDING UNDER THE**

INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES, OR ANY STATE OR LOCAL AUTHORITY. IN ADDITION, THE INJUNCTION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.

10.03   Release by the Debtor.  **PURSUANT TO BANKRUPTCY CODE §1123(b), AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, UPON THE EFFECTIVE DATE, THE DEBTOR SHALL RELEASE UNCONDITIONALLY, AND HEREBY IS DEEMED TO FOREVER RELEASE UNCONDITIONALLY: (A) CITIBANK AND ITS DIRECTORS, OFFICERS, ADVISORS, ACCOUNTANTS, CONSULTANTS, AND ATTORNEYS; (B) THE DEBTOR'S ADVISORS INCLUDING ATTORNEYS, SPECIAL COUNSEL, ACCOUNTANTS AND AUDITORS; AND (C) T. KANGADIS, ARISTIDIS KANGADIS, ANDROMAHI KANGADIS, AND KFM (COLLECTIVELY, THE "<u>RELEASED PARTIES</u>"), FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, RIGHTS, CAUSES OF ACTION AND LIABILITIES WHATSOEVER, INCLUDING THE RELEASED CLAIMS (EXCEPT FOR THE RIGHT TO ENFORCE THE PERFORMANCE OF THEIR RESPECTIVE OBLIGATIONS, IF ANY, UNDER THE PLAN), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE, EXCEPT FOR THOSE CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION THAT CONSTITUTES GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, *ULTRA VIRES* ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES.  IN ADDITION, THE RELEASE PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.**

10.04   Exculpation. **TO THE EXTENT PERMISSIBLE UNDER BANKRUPTCY CODE §1125(e), NEITHER THE RELEASED PARTIES NOR THEIR ADVISORS, ACCOUNTANTS, AND ATTORNEYS, INCLUDING SPECIAL COUNSEL, SHALL HAVE OR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST FOR ANY ACT OR OMISSION DURING THE PENDENCY OF THE CHAPTER 11 CASE IN CONNECTION WITH, OR ARISING OUT OF, THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE PROPERTY OR CASH TO BE DISTRIBUTED UNDER THE PLAN; PROVIDED, HOWEVER, THAT THE FOREGOING EXCULPATION SHALL HAVE NO EFFECT ON THE LIABILITY OF AN ENTITY WHICH RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE RESULTED FROM GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, *ULTRA VIRES* ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND, IN ALL RESPECTS, THE RELEASED PARTIES SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN. IN ADDITION, THE EXCULPATION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.**

**THE DEBTOR AND THE REORGANIZED DEBTOR RESERVE ALL OF THEIR RIGHTS AGAINST THE HOLDERS OF THE CLASS CLAIM, AND BURSOR & FISHER, TO**

SEEK DAMAGES, ATTORNEYS' FEES, COSTS, AND SANCTIONS FOR ANY VIOLATION OF THE INJUNCTION, EXCULPATION, OR RELEASE PROVISIONS UNDER THE PLAN, AND FOR VIOLATION OF THE AUTOMATIC STAY. IN ADDITION, THE DEBTOR AND THE REORGANIZED DEBTOR RESERVE THEIR RIGHTS TO SEEK TO EQUITABLY SUBORDINATE THE CLASS CLAIM AND TO OBJECT TO ANY FEE REQUEST MADE BY BURSOR & FISHER.

EXCEPT FOR THE RELEASED CLAIMS, NOTHING CONTAINED HEREIN SHALL CONSTITUTE A RELEASE OF AN INDEPENDENT CLAIM HELD BY A CREDITOR OR INTEREST HOLDER AGAINST A NON-DEBTOR ENTITY OR PERSON BASED ON ACTS OR OMISSIONS UNRELATED TO THE DEBTOR OR THE CHAPTER 11 CASE. IN ADDITION, NOTHING CONTAINED HEREIN OR IN THE PLAN SHALL RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES AND SETTLEMENTS CONTAINED IN THE PLAN.

NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL EFFECT A RELEASE OF ANY CLAIM BY THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY, INCLUDING, WITHOUT LIMITATION, ANY CLAIM ARISING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE AND LOCAL AUTHORITY AGAINST: (I) THE DEBTOR; (II) ANY OF THE DEBTOR'S SHAREHOLDERS, OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS; AND (III) THE RELEASED PARTIES. IN ADDITION, SUBJECT TO BANKRUPTCY CODE §§524 AND 1141, THE RELEASES DESCRIBED HEREIN SHALL NOT PRECLUDE POLICE, FEDERAL TAX, OR REGULATORY AGENCIES FROM FULFILLING THEIR STATUTORY DUTIES.

THE RELEASES DESCRIBED IN THIS SECTION ARE IN ADDITION TO, AND NOT IN LIEU OF, ANY OTHER RELEASE SEPARATELY GIVEN, CONDITIONALLY OR UNCONDITIONALLY, BY THE DEBTOR TO ANY OTHER PERSON. ANY RELEASE GIVEN BY THE DEBTOR OR A PERSON WHICH IS PART OF OR SUBJECT TO A FINAL ORDER OF THE BANKRUPTCY COURT REMAIN IN FULL FORCE AND EFFECT AND ARE RATIFIED BY THE PLAN.

10.05 Persons or Entities Not Released by the Debtor. Except for the releases contained in the Plan, the Confirmation Order and the Cash Collateral Order, the Debtor and the Estate are not releasing any claims or actions against any Person, or their respective affiliates, assigns, agents, directors, officers, advisors, accountants, investment bankers, consultants, attorneys and other representatives of any of the foregoing.

10.06 Good Faith. The entry of the Confirmation Order shall constitute the determination by the Bankruptcy Court that the Released Parties have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, pursuant to, among others, Bankruptcy Code §§1125(e) and 1129(a)(3), with respect to the foregoing.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

11.01  Headings.  The headings used in the Plan are inserted for convenience or reference only and are not part of the Plan.

11.02  Notices.  Notices shall be deemed given when received.  All notices, requests or demands described in or required to be made in accordance with the Plan shall be in writing and shall be delivered by overnight mail and email transmission as follows:

(a)    If to the Debtor:
SilvermanAcampora LLP
100 Jericho Quadrangle - Suite 300
Jericho, New York 11753
Attn: Adam L. Rosen
(516) 479-6300
arosen@silvermanacampora.com

(b)    If to Citibank, N.A.:
Rivkin Radler LLP
926 RXR Plaza
Uniondale, New York 11556
Attn: Stuart Gordon
(516) 357-3055
stuart.gordon@rivkin.com

(c)    If to the Plaintiffs in the Class Action:
Bursor & Fisher, P.A.
888 Seventh Avenue
New York, New York 10019
Attn: Scott A. Bursor
(212) 989-9113
scott@bursor.com

(d)    If to the U.S. Trustee:
Office of the U.S. Trustee
Alfonse D'Amato Courthouse
560 Federal Plaza
P.O. Box 9013
Central Islip, New York 11722
Attn: Stan Y. Yang
(631) 715-7800
stan.y.yang@usdoj.gov

11.03  If to a holder of a Claim or Interest, at the address set forth in its proof of Claim or proof of Interest filed with and allowed by the Court, or, if none, at its address set forth in the Schedules prepared and filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

AROSEN/1548363.8/063637

11.04   Change of Address.  Any of the parties identified in section 11.02 of the Plan may change the address at which it is to receive notices under the Plan by sending written notice pursuant to the provisions of this Article to counsel to the Debtor.

11.05   Modification of the Plan. The Debtor reserves the right, in accordance with the Bankruptcy Code, upon reasonable notice to Citibank, to amend or modify the Plan prior to the Confirmation Date or as soon as practicable thereafter.  After the Confirmation Date, the Debtor or the Reorganized Debtor may, upon appropriate motion and order of the Court, and after giving notice to counsel to Citibank, and the U.S. Trustee, in accordance with Bankruptcy Code §1127(b), remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

11.06   Reservation of Rights. Nothing contained herein shall prohibit the Debtor or the Reorganized Debtor from prosecuting or defending any of the rights of the Debtor's Estate, including without limitation, the Avoidance Actions.

11.07   Payment Dates. If payments or Distributions are due to be made under the Plan on a day other than a Business Day, such payment or Distribution shall instead be made, without interest, on the first (1st) Business Day immediately following the due date.  No payment of interest shall be made to holders of any Claims. Payment shall be considered timely upon issuance of the check representing the payment, not the day it is received.

11.08   Severability.   Should  any  provision  in  the  Plan  be  determined  to  be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

11.09   Successors and Assigns. The rights and obligations of any entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

11.10   Governing Law.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

11.11   Section and Article References.  Unless otherwise specified, all references in the Plan to Sections and Articles are to Sections and Articles of the Plan.

Dated: Hauppauge, New York       **KANGADIS FOOD INC.**
       October 9, 2014


       By:    s/ Themistoklis Kangadis_____
       Name:  Themistoklis Kangadis
       Title:    Chief Executive Officer

AROSEN/1548363.8/063637